IN THE UNITED STATES DISTRICT COURT FOR TENNESSEE
FOR THE MIDDLE DISTRICT
NASHVILLE DIVISION

| | | |
|---|---|---|
| DR. VANESSA GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00814 |
| | ) | Jury Demand (6) |
| THE METROPOLITAN | ) | |
| GOVERNMENT OF NASHVILLE AND | ) | Judge Crenshaw |
| DAVIDSON COUNTY, TENNESSEE, | ) | Magistrate Newbern |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED COMPLAINT

Comes the Plaintiff, Dr. Vanessa Garcia, and would state unto this Honorable Court as follows:

### PARTIES AND JURISDICTION AND VENUE

1. Plaintiff, Vanessa Garcia, brings this action under Title VII of The Civil Rights Act of 1964, 42 U.S.C.S. 2000(e) *et seq.* and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §4-21-101 *et seq.*, for sexually hostile work environment, retaliation and retaliatory hostile work environment and for violation of Tenn. Code Ann. §49-4-511. Jurisdiction is conferred upon the Court by 28 U.S.C. §1331 and the Court has pendant jurisdiction over the state court claims.

2. Plaintiff, Vanessa Garcia, is a citizen and resident of Franklin, Williamson County, Tennessee.

3. Defendant, the Metropolitan Government of Nashville and Davidson County, Tennessee is a governmental entity operating a public school system (hereinafter MNPS) in Nashville, Davidson County, Tennessee.

4. The cause of action alleged in this Complaint arose in Davidson County, Tennessee.

# FACTS

5. Dr. Shawn Joseph is the Director of Schools for the Defendant, the Metropolitan Government of Nashville and Davidson County, Tennessee.

6. Plaintiff, Vanessa Garcia, was hired by Defendant as its Executive Lead Principal for Elementary Schools in July 2013. She was hired by Dr. Jesse Register, who was then the Director of Schools.

7. Dr. Register retired on June 30, 2015 and Chris Henson was appointed the Interim Director of Schools. Five months later, in mid-December 2015, Plaintiff was appointed the Interim Chief Academic Officer for Leadership and Learning, a cabinet position within MNPS.

8. In May of 2016, Defendant hired a new Director of Schools, Dr. Shawn Joseph, under a four year contract lasting from July 1, 2016 through July 1, 2020.

9. In July 2016, Dr. Shawn Joseph hired Moreno Carrasco to a position on the same level as Plaintiff. Then, both Plaintiff and Moreno Carrasco reported to Dr. Sito Narcisse, the Chief of Schools.

10. Dr. Shawn Joseph and Moreno Carrasco were good friends before having worked at MNPS. Moreno Carrasco told Plaintiff on multiple occasions that he trained Dr. Joseph and they were good friends and would vacation together. In fact, Moreno Carrasco had Plaintiff assist him in planning a surprise birthday party for Dr. Joseph at Moreno Carrasco's apartment.

11. Plaintiff did not work in the same area as Moreno Carrasco but would see him one to two times per week at work. When Plaintiff would see Carrasco, he would routinely approach her, put his arm around her and hug her and would request to be introduced to whomever Plaintiff was with at that time.

12. Plaintiff began to notice Moreno Carrasco would "eye" her body when she was around. Plaintiff was told by Carrasco's secretary that Carrasco thought Plaintiff was attractive.

13. On December 15, 2016, Defendant held a Christmas party for a colleague at Sinema in Melrose. Moreno Carrasco had been drinking alcohol and was intoxicated. Plaintiff was standing across from executives of MNPS. Carrasco approached Plaintiff and put his right arm over her shoulder and rested his hand on her breast. Carrasco then whispered in Plaintiff's ear, "If you weren't married, I would so date you". Plaintiff turned and walked away.

14. In January 2017, Dr. Narcisse, Plaintiff's direct supervisor, assured Plaintiff and her co-workers that despite having a new Director of Schools, they would be able to keep their same positions and that this would be "the team" moving forward.

15. In March 2017, despite the assurance of Dr. Narcisse, Plaintiff and her three co-workers were told they would have to re-apply for their jobs.

16. Before Defendant told Plaintiff of the outcome of her application for her job, Moreno Carrasco told Plaintiff that she would not be remaining in her job but that she was the only one he wanted to work for him and that they would be creating a new department at MNPS.

17. Thereafter, having been told that she was not selected by the interview panel, Plaintiff was demoted to Executive Director of Leadership Development and Moreno Carrasco was made her direct supervisor.

18. Plaintiff and two of her co-workers were replaced by employees who worked under Plaintiff. The third co-worker, a colleague of Plaintiff's, was replaced by Moreno Carrasco. Then both Plaintiff's colleague and Plaintiff reported to Moreno Carrasco along with a third employee.

19. In June 2017, one of the other co-workers who did not have to re-apply for her job but also was demoted received a $24,000.00 stipend that made up for her decrease in pay while

Plaintiff and the other co-workers never received a stipend. David Siever, Board Liason, later stated all of the workers were to receive the full stipend because "[t]he decision was made to keep their salaries intact through the end of the year".

20. After Plaintiff was told by Moreno Carrasco that she would be reporting to him, but before the actual change of positions, on June 6, 2017, Moreno Carrasco requested she come to his apartment for work. While in route to his apartment, Moreno Carrasco told Plaintiff he would not be there, but the door was unlocked and to just go inside. When Plaintiff arrived, the door was unlocked, and she went inside as she had been instructed. A chicken dish was cooking in the oven, an open beer was on the counter and Moreno Carrasco was not there. He later arrived, and they worked for a few hours. When the work day ended, Plaintiff began to pack up her work and Moreno Carrasco asked where she was going because he thought she was staying for dinner. He then grabbed her hand and stated, "I want to see if you can salsa dance." Plaintiff told him she was a terrible dancer and left.

21. On June 28, 2017, while at Camp Widjiwagan, he offered to give her a ride to her vehicle which was parked at a distance. She accepted and when she got out of the car, Moreno Carrasco stated, "I forgot to tell you, I had a dream about you. You were getting out of the shower and had a towel wrapped around you and you had all kinds of tattoos on your back." Plaintiff responded that she did not have tattoos on her back and quickly left.

22. During the 2nd week of July 2017, while working at Trevecca Nazarene University, Moreno Carrasco told Plaintiff, if she kept on losing weight, she would lose that "ass of yours" and that he thought at one time they were going to kiss. Plaintiff told him she had not done anything to make him get that idea.

4

23. During a training week at Trevecca (July 10-12), Carrasco asked Plaintiff if she wanted to read text messages between him and a current Assistant Principal in MNPS. Plaintiff told him "NO". Carrasco then stated they were "crazy hot" text messages.

24. Plaintiff told a member of the MNPS Board about Moreno Carrasco and all the events occurring from the Christmas party forward and requested that she keep it confidential so that Plaintiff would not lose her job. The member of the MNPS Board stated she would keep it quiet but would check back with Plaintiff.

25. In August, Plaintiff again spoke with the Board member. The Board member called Plaintiff and stated that the matter had been on her mind and she really thought they should tell Dr. Joseph. Plaintiff was against her name being used but agreed the Board member could speak to Dr. Joseph if she did not use Plaintiff's name.

26. It is believed the Board member spoke with Dr. Joseph and Dr. Joseph approached Moreno Carrasco, but the allegation had changed to someone saw him at a bar grabbing a woman's breast.

27. Throughout this time period and into September 2017, Moreno Carrasco would call Plaintiff "Baby" and "Darling" and would always eye her body up and down. He would call her at night on numerous occasions to ask non-work related questions like "How are you doing?" He would tell her the details about his sex life with other MNPS's employees.

28. On approximately October 20, 2017, Moreno Carrasco called Plaintiff at home after work hours. Carrasco started to discuss his problems with his girlfriend and he went on to say, "If you only knew what a great f--k she was, you would understand."

5

29. Plaintiff did not like to be in the office alone with Moreno Carrasco and would request her colleague accompany her into his office. Plaintiff's colleague and Plaintiff are friends, having known each other before working for MNPS.

30. On November 8, 2017, Carrasco told Plaintiff that she sucked the energy out of the room when she walked into the team meeting. He continued to state that Plaintiff was very influential and that her colleague followed her around everywhere like a puppy.

31. On November 15, 2017, Plaintiff met with Moreno Carrasco to go over goals to be set for the year. Up to this point, there had been no complaints about her job performance and she was not on any performance review. Moreno Carrasco told her that he felt there was a sense of dissatisfaction with her demeanor and she was holding back on making positive contributions to the team. He also stated her personal life (family) was getting in the way of her work. Moreno Carrasco stated, "I would hate to have to make changes at the end of the year because you are not performing". Plaintiff never received an evaluation process, a performance review or evaluation, from Moreno Carrasco. An evaluation process was never shared by Dr. Sito Narcisse, but an evaluation was given by Dr. Narcisse after Plaintiff was demoted the prior year.

32. At this point, Plaintiff was competently performing her job, but she was refusing all of Moreno Carrasco's advances.

33. Within an hour of this meeting ending, Plaintiff immediately contacted Human Resources, and told the representative of Moreno Carrasco's threat. She also told him a member of the Board knew of her complaints.

34. The Human Resources representative made it clear that the complaints would have to be investigated. He began the investigation and later told Plaintiff that he had been told by

6

Sharon Pertiller, Executive Officer of Human Resources, that he had better investigate this right for Dr. Joseph (meaning in favor of Moreno Carrasco) or he will fire you.

35. On November 16, 2017, Defendant placed Moreno Carrasco on administrative leave.

36. Thereafter, Moreno Carrasco sent Plaintiff a text message that stated the following:

(1/2) Happy Thanksgiving Vaanessa (sic). I hope your home is field (sic) with peace and kindness. GOD looks after those who are righteous and forgives those who are not.

(2/2) Be Blessed!!

37. Moreno Carrasco resigned from Metro on December 8, 2017, during the ongoing investigation into his behavior.

38. It is Plaintiff's understanding that other witnesses had informed Metro of other inappropriate words and conduct by Moreno Carrasco.

39. On January 9, 2018, MNPS stated in a letter from Michael Taylor, Metro Government Human Resources Assistant, "If Mr. Carrasco had not resigned, MNPS should have given him some measure of disciplinary action." "In my view, his conduct was too egregious to only receive a reprimand."

40. On January 18, 2018, Defendant found Moreno Carrasco violated Defendant's harassment policy.

41. The Human Resources representative was then told by Metro that he must resign to avoid a termination. He thereafter resigned his position for Defendant.

42. After Moreno Carrasco resigned, Plaintiff and the two other employees who reported to Moreno Carrasco began to report directly to Deborah Story in Human Resources.

7

Case 3:18-cv-00814 Document 20 Filed 03/19/19 Page 7 of 12 PageID #: 101

43. In the Spring of 2018, Defendant was hiring for Executive Officer of Organizational Development, Moreno Carrasco's position. Plaintiff applied for the position.

44. Plaintiff was highly qualified for the position.

45. In March 2018, Plaintiff was called by Deborah Story and was told she was not qualified for the position.

46. In the Spring in a principal's meeting, Dr. Joseph began speaking of people coming at him and wanting to get him and then he played, "Blow the Whistle". Plaintiff got a text message from a principal that stated, "Is this for you?" Plaintiff also felt this was meant towards her.

47. Defendant fired Plaintiff on May 11, 2018.

48. Defendant was going through a realignment in the Spring/Summer 2018 due to the budget.

49. Of the 20-30 executive directors at the central office only 2 were fired in this alleged realignment, Plaintiff and Plaintiff's colleague, her support throughout the sexual harassment.

50. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and a Right to Sue letter was issued on August 9, 2018. (Attached hereto).

## CAUSES OF ACTION

### Hostile Work Environment under Title VII and THRA

51. Plaintiff would state the actions of Moreno Carrasco and Defendant created a sexually hostile work environment for the Plaintiff. This hostile work environment continued through November 2017.

52. Plaintiff is female and a member of a protected class in that she is female.

53. Plaintiff was subjected to the unwelcome harassment of Moreno Carrasco.

54. The harassment was based on plaintiff's protected status.

55. The harassment affected a term, condition, or privilege of employment.

56. Defendant knew or should have known about the harassing conduct but failed to take corrective or preventative actions. The harassing conduct was known to Defendant because Plaintiff told Defendant, through the School Board and through Dr. Joseph, and the harassment was witnessed by high officials at MNPS.

### Retaliation under Title VII and THRA

57. Plaintiff engaged in activity protected by Title VII and the THRA in all of the complaints about Moreno Carrasco's sexual harassment of her.

58. This exercise of protected activity was known to Defendant because Plaintiff told Defendant, through the School Board and through Dr. Joseph, and the harassment was witnessed by high officials at MNPS.

59. Defendant thereafter took adverse employment actions against the Plaintiff, in that Defendant failed to hire Plaintiff into Carrasco's position after his termination and thereafter fired Plaintiff. Plaintiff was also subjected to severe or pervasive retaliatory harassment by Moreno Carrasco.

60. There was a causal connection between the protected activity and the adverse employment action or harassment.

### Retaliatory Hostile Work Environment under Title VII and the THRA

61. Plaintiff is female and a member of a protected class in that she is female.

62. Plaintiff was subjected to unwelcomed retaliatory harassment, through the actions and threats of Moreno Carrasco and the failure of Defendant to hire Plaintiff into Carrasco's position after his termination and Defendant's ultimate firing of Plaintiff.

63. The harassment was based on the employee's protected activity.

64. The harassment created a hostile work environment.

65. The employer failed to take reasonable care to prevent and correct any harassing behavior.

## **BREACH OF CONTRACT**

66. Defendant breached its contractual obligation through its Board to pay Plaintiff the additional stipend.

## **VIOLATION OF TENN. CODE ANN. §49-5-511(b)**

66(a). On May 11, 2018, Plaintiff's position as Executive Director of Leadership Development was eliminated due to budget shortfall for the 2018-2019 school year.

66(b). Defendant claims the only individual who had any input into the decision to eliminate Plaintiff's job with the Defendant was Deborah Story, Defendant's Chief Human Resources Officer.

66(c). Defendant claims no other individual and/or board, council or entity approved the decision to eliminate Plaintiff's job.

66(d). By law, only the Defendant's School Board is empowered to dismiss employees pursuant to Tenn. Code Ann. §49-5-511(b) for a decrease in enrollment or other good reason.

66(e). Defendant violated statutory law when it allowed an employee not authorized by law to make the decision to eliminate Plaintiff's job without any board approval.

66(f). Only 4 days later, on May 15, 2018, a list of the positions being eliminated due to the budget was presented to and approved by Defendant's School Board. Plaintiff's job elimination was not on this list and Plaintiff's job elimination was not brought to the Board's attention for the Board's approval.

10

Case 3:18-cv-00814   Document 20   Filed 03/19/19   Page 10 of 12 PageID #: 104

## DAMAGES

67. As a direct and proximate result of Defendant's unlawful actions, harassment and sexually hostile work environment, Plaintiff has suffered and continues to suffer emotional pain, suffering, stress, anxiety, loss of enjoyment of life, pain and suffering, humiliation and professional and personal embarrassment, and depression and inconvenience.

68. As a direct and proximate result of Defendant's unlawful actions and retaliation and retaliatory hostile work environment, Plaintiff has suffered and continues to suffer emotional pain, suffering, stress, anxiety, loss of enjoyment of life, pain and suffering, humiliation and professional and personal embarrassment, depression and inconvenience.

69. As a direct and proximate result of Defendant's unlawful actions, discrimination, retaliation and retaliatory and discriminatory hostile work environments, Plaintiff has suffered and continues to suffer damages for lost wages, benefits, including pension benefits and front pay.

70. As a result, Plaintiff is entitled to recover her damages, including lost wages, benefits, including pension benefits, compensatory, liquidated and punitive damages, attorney's fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

**WHEREFORE, PLAINTIFF PRAYS:**

1. That Plaintiff, Vanessa Garcia, be granted a judgment against Defendant for $1,800,000.00 for compensatory and other damages suffered by her, including but not limited to, damages for pain and suffering, humiliation, professional and personal embarrassment, stress, anxiety, depression, loss of enjoyment of life, personal injury, emotional pain and inconvenience, back pay, lost benefits, and loss of pension benefits.

2. That the Plaintiff be ordered reinstated, or front pay in lieu thereof, with all accumulated salary rights and benefits as if continuously employed.

11

3. Plaintiff, Vanessa Garcia, further prays for both liquidated and punitive damages and for pre-judgment interest, attorney's fees and the cost of this cause.

4. Plaintiff, Vanessa Garcia, prays for a jury of six to try this cause.

5. Plaintiff, Vanessa Garcia, prays for such other further relief as may be necessary or appropriate.

Respectfully Submitted,

s/Ann Buntin Steiner
Ann Buntin Steiner, #11697
Steiner & Steiner, LLC
613 Woodland Street
Nashville, TN 37206
(615) 244-5063
*Attorney for Plaintiff, Dr. Vanessa Garcia*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, a copy of Plaintiff's Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows: Charles K. Grant & Ashton Banta, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Baker Donelson Center, 211 Commerce Street, Suite 800, Nashville, TN 37201. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

s/Ann Buntin Steiner
Ann Buntin Steiner
Steiner & Steiner, LLC
613 Woodland Street
Nashville, TN 37206
(615) 244-5063