THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DR. VANESSA GARCIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:18-cv-00814 |
| THE METROPOLITAN ) | JURY DEMANDED |
| GOVERNMENT OF NASHVILLE ) | |
| AND DAVIDSON COUNTY, ) | |
| TENNESSEE, ) | Judge Campbell |
| ) | Magistrate Newbern |
| Defendant. ) | |

## DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*

Pursuant to Federal Rules of Evidence 401, 402, 403, 404, 602, 701, 702, 801, and 802, Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Defendant" or "Metro") respectfully moves this Court for an Order, in advance of trial, prohibiting Plaintiff from introducing evidence, either documentary or testimonial, questioning any witness, or presenting any arguments to the jury (including in opening or closing statements and voir dire) regarding the facts and/or issues identified herein. For the reasons explained below, such evidence is irrelevant to the allegations contained in the Amended Complaint (Dkt. No. 20) under Rule 401 and inadmissible under Rule 402. If such evidence was found to be relevant, it still should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury pursuant to Rule 403. Certain evidence also is subject to the exclusion under Rules 404, 602, 701, 702, 801, and 802.

I.  **INTRODUCTION**

The purpose of a motion *in limine* is to prevent the introduction at trial of evidence that is deemed improper either by statute or common law. *Luce v. US*, 469 US 38, 40 (1984). Motions *in limine* may also be used to exclude irrelevant or immaterial matters and to exclude evidence when its probative value is outweighed by the danger of unfair prejudice as outlined in the Federal Rules of Evidence. In evaluating whether specific material is properly excludable pursuant to an *in limine* motion, it is necessary to determine whether the rules of evidence call for the exclusion and, if not, whether the relevance, materiality, and probative value of the evidence is outweighed by its prejudicial effect. Fed. R. Evid. 401-403.

II. **ARGUMENT**

   A. **Defendant's First Motion *in Limine* to Exclude the Bone McAllester Report or Any Testimony from Witnesses Concerning the Report's Contents**

Defendant anticipates that Plaintiff may try to introduce evidence or testimony at trial relating to a report that was prepared by outside law firm Bone McAllester Norton PLLC ("Bone McAllester") on February 12, 2019, at the Board of Education's request and pursuant to the attorney-client privilege. Thereafter, the report was published by News Channel 5 and perhaps other news outlets. It is unknown how News Channel 5 came into possession of the report and the attorney-client privilege was never waived by Defendant.

The purpose of Bone McAllester's confidential engagement was to review Defendant's policies, procedures, and practices regarding various claims and investigations. The 11-page, single-spaced report contains several recommendations about unrelated issues. At the end of the report, Bone McAllester calls into question the competence of the "Executive Director of Human Resources – Talent Strategy," which Plaintiff now speculates is a reference to Sharon Pertiller.

2

4818-1173-2655v2
2826592-000016 12/27/2019
Case 3:18-cv-00814   Document 104   Filed 12/27/19   Page 2 of 20 PageID #: 2413

Consistent with this theory, Plaintiff's counsel questioned various witnesses about the report during depositions as follows:

**Excerpts from Shawn Joseph's Deposition:**

Q. Okay.· Now, this audit, have you gotten that audit yet, the HR audit?
A.· Yes.
Q.· Okay.· And who prepared it?
A.·  Bone, McAllester, and Norton.
Q.· Okay.· Have you read it?
A.· Yes.
Q.· Did it cause you any concern?
A.· Please clarify the question.
Q.· Were you concerned about any parts of the report?
A.· Yeah, so the -- this -- you know, there were pieces of the report that I had questions about that -- because we have not had an opportunity to clarify with Bone, McAllester, and Norton.· So I'm concerned about how they drew some of the conclusions that they drew, because there was no data attached and no appendices attached to the audit form.· We've not talked about it, so I've lots of questions/concerns just in the terms of understanding how some conclusions were made.

(Joseph Depo. 192:6-193:3).[1]

**Excerpts from Sharon Pertiller's Deposition:**

Q. Okay.  Now, did anyone – are you familiar with the Bone, McAllester report?

(Pertiller Depo. at 9:3-4).[2]

. . .

Q. And is it true as well that no one from Metro Nashville Public Schools even came up to you to discuss with you any wrongdoing or any problems they had with your performance because of that report?

(Pertiller Dep. at 11:12-16).

Similarly, during Board Member Amy Frogge's deposition, Plaintiff's counsel asked about the report, whether Frogge believed it addressed Sharon Pertiller's job performance, and

---

[1] Cited excerpts from the Deposition of Shawn Joseph are attached as Exhibit A.
[2] Cited excerpts from the Deposition of Sharon Pertiller are attached as Exhibit B.

what actions were taken as a result of the report's recommendations. (Frogge Depo. at 81:18-82:25, 94:21-95:15).[3]

In light of Plaintiff's counsel's questions above, Defendant anticipates that Plaintiff will attempt to introduce the report, elicit testimony from witnesses concerning the report's contents, or simply argue to the jury that another law firm determined that Pertiller was "incompetent" and should have been terminated. Such evidence, however, is improper hearsay, irrelevant, and unfairly prejudicial.

1. **The report is hearsay.**

The report's contents are hearsay, for which there is no exception. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c); see also *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008). Plaintiff is offering the report to establish that an outside law firm found Pertiller "incompetent" and recommended her termination. However, Bone McAllester reached its conclusions based exclusively on what other employees allegedly said during interviews. Accordingly, this evidence is impermissible hearsay for which no exception under the Federal Rules of Evidence applies. For this reason, the report and any testimony concerning its contents should be excluded from the trial of this case.

2. **The report is irrelevant.**

Additionally, the report should be excluded because it is irrelevant. This case involves a complaint Plaintiff made about Moreno Carrasco ("Carrasco"). It is undisputed that, immediately after Plaintiff complained about Carrasco to Human Resources, an investigation began. In fact, Carrasco was placed on administrate leave the very next day. During Defendant's investigation

---

[3] Cited excerpts from the Deposition of Amy Frogge are attached as Exhibit C.

4

4818-1173-2655v2
2826592-000016 12/27/2019
Case 3:18-cv-00814   Document 104   Filed 12/27/19   Page 4 of 20 PageID #: 2415

into Plaintiff's claims, Carrasco resigned. However, the investigation continued. Ultimately, it was determined that Carrasco had violated Defendant's sexual harassment policy and that disciplinary action would have been taken had Carrasco still been employed by Defendant.

Importantly, the report **does not** address the Carrasco investigation or how it was handled by Human Resources. Thus, the report and its purported general statements about Pertiller are irrelevant to the issues. Moreover, if the report is admitted, Defendant will have to challenge its findings by calling additional witnesses to address matters unrelated to the facts of this case. For these reasons, the Court should exclude the report and testimony concerning its contents.

### 3. The report's use would be unfairly prejudicial.

Finally, testimony from witnesses concerning the report is unfairly prejudicial. The Court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Allowing Plaintiff to introduce evidence that Bone McAllester made a determination on Pertiller's competence as a human resources professional is not only improper, but unfairly prejudicial. The purpose of Bone McAllester's engagement was not to review Pertiller's competence, but to review Defendant's procedures and practices concerning a number of issues, nearly all of which are unrelated to this lawsuit.

At the very end of its report, Bone McAllester allegedly offers an opinion about Pertiller following its interviews with employees who were not members of the Human Resources Department. The report does not detail the specific opinions offered or provide any underlying analysis for its conclusions. It is for the jury to conclude after hearing testimony from witnesses with personal knowledge whether Pertiller performed her role satisfactorily as it relates to the Carrasco investigation. For a jury to hear that an outside law firm determined that Pertiller was

5

incompetent will improperly influence their opinion and mislead them. Accordingly, such evidence is unfairly prejudicial and should be excluded pursuant to Fed. R. Evid. 403.

### B. Defendant's Second Motion *in Limine* to Exclude Evidence Regarding Purported Harassment of and/or Retaliation Against Non-party Employees.

Defendant anticipates Plaintiff may call several witnesses at trial who have allegedly been harassed by Moreno Carrasco or made other allegations of discriminatory conduct, including Nicole Cobb, Aimee Wyatt, Kyla Krengle, Judy Vokes, Marissa Stanley, and Jennifer Bell. Any such evidence concerning other employees should be excluded because the testimony would be based upon speculation and/or inadmissible hearsay, carries little probative value, and will be highly prejudicial to the Defendant.

#### 1. Evidence regarding what other employees allegedly said about being harassed by Carrasco is inadmissible hearsay and character evidence.

First, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Thus, any evidence pertaining to any purported harassment of other employees by Carrasco is improper character evidence due to be excluded.

Additionally, as the Court acknowledged in its Memorandum on summary judgment statements from the other employees regarding any harassment they experienced is inadmissible hearsay. *See* Memorandum (Dkt. No. 101) at pp. 11-12, 17 n. 4 ("Defendant is correct that the 'witness statements' from other MNPS employees about their interactions with Carrasco gathered during the internal investigation are inadmissible hearsay . . . ."). Out-of-court

statements offered by Plaintiff to show that other employees were harassed by Carrasco comprise inadmissible hearsay and should be excluded.

> 2. **The evidence is not relevant to Plaintiff's perception that a hostile work environment existed because Plaintiff was not aware of the purported harassment at the time she complained, and the other employees' circumstances are too factually distinct from Plaintiff's.**

To the extent the Court is inclined to permit either Plaintiff or other witnesses to testify as to alleged harassment of other employees as it relates to whether Plaintiff perceived a hostile work environment, the potential prejudice of the evidence outweighs any of its probative value. Trial courts "regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant." *Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 41 (6th Cir. 2009); *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152 (6th Cir. 1988) (holding that testimony of co-workers regarding their unrelated discriminatory treatment unfairly embellishes the circumstantial evidence, thereby prejudicing the defendant); *Hosse v. Sumner Cty. Bd. of Educ.*, No. 18-5832, 2019 WL 2871104, at *3 (6th Cir. July 3, 2019) (excluding me-too testimony based in part on two-year gap between plaintiff's and witness's alleged discrimination).

The United States Supreme Court has instructed that, before admitting "me too" evidence, the district court must conduct "a fact-intensive, context-specific inquiry" that includes an evaluation of "how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (addressing the standards for admission of me too evidence in age discrimination case); *Quigley v. Winter*, 598 F.3d 938, 951 (8th Cir. 2010) (holding the district court properly performed its gatekeeping function and did not abuse its discretion in admitting in part and excluding in part me too

evidence after the court held an evidentiary hearing outside of the presence of jury to hear the witnesses testimony).

Other important factors include whether the challenged conduct involves the same form of discrimination, temporal proximity to events at issue in the case, and whether the plaintiff and the other "me too" witnesses are similarly-situated. *See Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012) (listing relevant factors "such as temporal and geographical proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations of retaliation").

Here, any probative value of the "me too" witnesses is greatly outweighed by its potential prejudice. First, Plaintiff did not learn of the alleged harassment of other employees until **after** Plaintiff made her complaint and Carrasco was put on leave. *See* Plaintiff's Statement of Facts in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 67 ¶¶ 23-25). Thus, these allegations could not have contributed to Plaintiff's perception of a hostile work environment given that the alleged harasser was gone by the time she learned about them. *See Wanchik v. Great Lakes Health Plan, Inc.*, 6 Fed. Appx. 252, 262 (6th Cir. 2001) ("[O]f course, plaintiff must have been aware of these incidents during her employment, even if indirectly, for the accounts of others to be relevant"); *Abeita v. TransAmerica Mailings, Inc.*, 159 F. 3d 246, 249 n. 4 (6th Cir. 1993) (dismissing as irrelevant testimony concerning harassment about which plaintiff knew nothing of at the time); *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520–21 (3d Cir. 2003) ("Subsequent actions by an employer against co-workers may be less probative of an employer's intent than prior actions…."); *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) ("The court was disturbed, as are we, that [the] proposed testimony relates to events that occurred after [plaintiff] was discharged. Testimony about later

8

events is even less relevant and of less probative value than evidence of prior bad acts generally, because the logical relationship between the circumstances of the character testimony and the employer's decision to terminate is attenuated.").

Second, the circumstances regarding Plaintiff's employment and the employment of the purported "me too" witnesses it too distinct for the probative value to outweigh its potential prejudice. Notably, **none** of the purported "me too" witnesses made a complaint of sexual harassment against Carrasco to Metro. Importantly, only one (Marissa Stanley) reported to Carrasco. Moreover, none had the same job as Plaintiff. *See Hill v. Goodfellow Top Grade*, No. 18-CV-01474-HSG, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019) (granting motions *in limine* to exclude evidence relating to other employees' discrimination claims where the "witnesses' stories involve[d] circumstances and theories of discrimination that are substantially different from Plaintiff's claims" and no evidence showed the witnesses were allegedly subject to the same adverse employment actions as Plaintiff"). The employees' circumstances are further distinguishable as follows:

- **Nicole Cobb**: Plaintiff testified that, while Plaintiff was the Executive Director of Leadership Development and directly supervised by Carrasco, to her knowledge, Cobb was "Executive Director of School Counseling." Plaintiff's Depo. at 105:9-13.[4] Plaintiff could not testify if or when Cobb was supervised by Carrasco. Further, Plaintiff testified that she learned of only one instance of Carrasco allegedly placing his hand on Cobb's back underneath her shirt. Plaintiff's Depo. at 112:8-20. Plaintiff testified that she did not witness the incident and only learned about it "after." *Id.* Plaintiff does not allege she knew of the incident prior to making her complaint of harassment against Carrasco. Plaintiff has no knowledge of whether Cobb reported

---

[4] Cited excerpts from the Deposition of Vanessa Garcia are attached as Exhibit D.

her allegations to anyone at Metro other than during the investigation of Plaintiff's complaint. Notably, in her written statement from the investigation, Cobb stated she never felt harassed by Carrasco.

- **Aimee Wyatt**: Plaintiff could not recall what position Wyatt held, only that it was "something about school choice." Plaintiff's Depo. at 125:1-7. The only incident Plaintiff witnessed was Carrasco allegedly trying to kiss Wyatt on the cheek, which Plaintiff saw "out of the corner of [her] eye." Plaintiff's Depo. at 112:21-113:5. Plaintiff has no knowledge of whether Carrasco supervised Wyatt, nor does she have any knowledge whether Wyatt reported her allegations to anyone at Metro other than what she saw in the investigation report viewed during the course of this litigation.

- **Jennifer Bell**: Plaintiff testified she did not know what Bell's position was other than that she was "in charge of the after-school programs." Plaintiff's Depo. at 110:8-14. The only incident Plaintiff knew of concerning Bell was that, on one occasion, Carrasco showed Bell an inappropriate picture and made a comment about performing oral sex. Plaintiff's Depo. at 109:7-22. Plaintiff did not learn of this incident until after she filed her complaint. *Id.*; Dkt. No. 67 ¶ 25.

- **Kyla Krengle**: Plaintiff did not testify that she had any knowledge of Krengle's alleged harassment. Plaintiff's Depo. at 109:1-6 (stating she did not think Carrasco acted inappropriately toward anyone else other than Cobb, Wyatt, and Bell).

- **Judy Vokes**: Plaintiff did not learn of Vokes's alleged harassment until after she filed her complaint. Plaintiff's Depo. at 61:12-23. Plaintiff has no knowledge of whether Vokes was supervised by Carrasco or whether Vokes reported any alleged harassment to anyone at Metro other than what is included in the investigation of Plaintiff's complaint.

10

4818-1173-2655v2
2826592-000016 12/27/2019
Case 3:18-cv-00814   Document 104   Filed 12/27/19   Page 10 of 20 PageID #: 2421

- **Marissa Stanley**: Plaintiff learned of Stanley's allegations after she filed her complaint. Dkt. No. 67 ¶ 24. The only alleged harassment Plaintiff learned of concerning Stanley was that Carrasco would allegedly "eye her up and down and compliment her" and "show her pictures of women from his phone." *Id.* Although Stanley reported to Carrasco at one point, Plaintiff has no knowledge of when the purported harassment occurred.

Because the circumstances surrounding Plaintiff's employment and alleged harassment are so distinct from the circumstances surrounding the alleged "me too" witnesses' employment, any evidence or testimony regarding harassment, discrimination or retaliation against them should be prohibited.

3. **Permitting Plaintiff to present evidence of alleged harassment experienced by other employees will result in several burdensome mini-trials.**

The introduction of evidence or testimony regarding non-party employees will result in burdensome and confusing mini-trials, the evidence and testimony should be excluded. *See, e.g.*, *Sanders v. Correct Care Sols., LLC,* No. 3:15-CV-01526, 2018 WL 10150130, at *1 (M.D. Tenn. Feb. 12, 2018) (granting motion *in limine* to exclude "me too" evidence where admission of the evidence would result in a mini-trial regarding a witness "who did not pursue a claim against Defendant"). Should the Court permit Plaintiff's counsel to introduce evidence or testimony regarding purported discrimination against non-party employees, the parties will be forced to try at least six additional trials within a trial, which would hopelessly confuse the jury. Indeed, if Plaintiff's counsel is allowed to introduce evidence regarding the harassment Cobb, Wyatt, Bell, Krengle, Vokes, or Stanley allegedly suffered, Defendants will be required to introduce evidence to rebut or impeach these facts regarding what occurred and whether it was reported. Thus, because the introduction of evidence or testimony regarding non-party

employees will result in burdensome and confusing mini-trials, the evidence and testimony should be excluded.

### C. Defendant's Third Motion *in Limine* to Exclude Any Evidence Regarding Metro's Alleged Race-based Hiring

Defendant anticipates Plaintiff may try to introduce evidence of alleged race-based hiring by Metro. Specifically, in her deposition, Plaintiff testified concerning Metro's alleged targeted hiring of minority candidates. *See, e.g.*, Plaintiff's Depo. at 134:26-137:2 (Plaintiff testifying that although she believed the selection of the community superintendent positions for which she applied was racially motivated, she was not a part of the decisions). Plaintiff, however, had no knowledge of the reasons the other candidates were hired as she testified she was not a part of the decision-making. *Id.* Moreover, Plaintiff has asserted claims of sexual harassment and retaliation based on her complaint of sexual harassment. Metro's alleged hiring practices regarding minority candidates is irrelevant to Plaintiff's claims, likely to confuse the issues for the jury, and any of its probative value is outweighed by its prejudice. Thus, any such evidence is due to be excluded under Federal Rules of Evidence 602, 401 and 403.

### D. Defendant's Fourth Motion *in Limine* to Exclude Alleged Hearsay Comments by Terry Shrader.

Plaintiff may try to present evidence at trial regarding a statement Terry Shrader allegedly told Plaintiff he made to Dr. Sonya Stewart. *See* Plaintiff's Affidavit (Dkt. No. 62-3 ¶ 50) ("Shrader told me that Stewart felt very uncomfortable due to the number of times Carrasco came on to her. Shrader told me that he advised Stewart not to do anything about this because we did not know who we were dealing with and unless you want to get fired, I would sit on it."). Plaintiff's statements regarding what Shrader allegedly told her about what he told Dr. Stewart comprise hearsay within hearsay. Under such circumstances, both statements have to be subject

4818-1173-2655v2
2826592-000016 12/27/2019
Case 3:18-cv-00814   Document 104   Filed 12/27/19   Page 12 of 20 PageID #: 2423

to an exception. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Thus, to the extent Plaintiff intends to rely on Shrader's alleged statement that he told Dr. Stewart not to report any alleged complaints of harassment by Carrasco, that statement comprises inadmissible hearsay not subject to any exception and is inadmissible under Rules 801, 802, and 805.

   E. **Defendant's Fifth Motion *in Limine* to Exclude Any Evidence Regarding Claims of Retaliation by Scott Lindsey**

Defendant anticipates Plaintiff may try to introduce evidence at trial regarding claims of retaliation by former employee Scott Lindsey. Such claims are irrelevant to Plaintiff's claims as the circumstances were different. Lindsey was terminated for poor job performance, whereas Plaintiff's job ended as a result of budgeting constraints and reorganization in the Human Resources Department.

Additionally, Lindsey's termination occurred after Plaintiff's separation. Courts routinely hold that after-the-fact evidence is irrelevant to a person's intent, knowledge, or state of mind at an earlier time. *See, e.g.*, *Gulbranson v. Duluth, Misabe & Iron Range Railway Co.*, 921 F.2d 139, 142 (9th Cir. 1990); *Arnold v. Riddell, Inc.*, 882 F. Supp. 979, 993 (D. Kan. 1995); *Sealover v. Carey Canada*, 793 F. Supp. 569, 579 (M.D. Pa. 1992); *Jones v. Kayser–Roth Hosiery, Inc.*, 748 F. Supp. 1276, 1291 (E.D. Tenn. 1990) (employer's conduct after the employee terminations had taken place deemed irrelevant).

Finally, Lindsey's opinion as to whether he was retaliated against also constitutes an impermissible opinion by a lay witness. Courts have excluded witness testimony regarding patterns of discrimination, finding them to be impermissible lay witness opinions and legal conclusions. *Mitroff v. Xomox Corp.*, 797 F. 2d 271, 276 (6th Cir. 1986) ("[T]he statements

13

allegedly made by [declarant] were opinions . . . [and] they amounted to legal conclusions."). Further, Lindsey's testimony about his perceived retaliation based on his involvement in Plaintiff's case and his testimony regarding application of the policy are neither helpful to understanding his testimony nor to the determination of a fact at issue. Thus, any such opinions should be excluded.

### F. Defendant's Sixth Motion *in Limine* to Exclude Any Evidence Regarding News Channel 5's Coverage of Plaintiff's Allegations and/or Purported Misconduct by Defendant

Defendant anticipates Plaintiff may try to introduce evidence at trial regarding coverage of Plaintiff's case and a purported investigation by News Channel 5 and other news organizations. *See, e.g.*, Plaintiff's Depo. at 61:20-62:2 (acknowledging Plaintiff's belief that an investigation file regarding Carrasco had been made available on the news); Lindsey Depo. at 15:14-22)[5] (". . . . And this was right after I sent a text message in response to a text message that Deborah Story sent both myself and Sharon Pertiller notifying us that Mo Carrasco was on the news for being on administrative leave for this investigation.").

Any such evidence comprises inadmissible hearsay, is likely to confuse the issues for the jury, and its probative value is greatly outweighed by its potential for prejudice. Thus, any such testimony should be excluded pursuant to Federal Rules of Evidence 403 and 801.

### G. Defendant's Seventh Motion *in Limine* to Exclude Opinions by Scott Lindsey, Michael Taylor, and Amy Frogge as to Whether Sexual Harassment/Hostile Work Environment/Retaliation Occurred.

Defendant anticipates Plaintiff will try to elicit testimony from Scott Lindsey, Michael Taylor, and Amy Frogge as to their opinions about whether Carrasco sexually harassed Plaintiff. *See* Plaintiff Brief in Opposition to Defendant's Motion for Summary Judgment (Dkt No. 64 at

---

[5] Cited excerpts from the Deposition of Scott Lindsey are attached as Exhibit E.

pp. 1-2) ("In my professional opinion, it is likely too much for him to refute. It is so bad that …[Carrasco] . . . has violated every time of sexual harassment imaginable.") (citing Lindsey Depo.); *id.* at 4-5 (claiming "[a]ll three of Defendant's employees who investigated this found Plaintiff had been subjected to a sexually hostile work environment") (citing Lindsey Decl. ¶¶ 14 & 18, Lindsey Depo. at p. 109), Taylor Depo. at pp. 5, 50, 106-107,[6] and Frogge Depo. at pp. 5, 47-48)).

Lindsey is a former employee of Metro's Human Resources Department. Taylor is the Human Resources Assistant Director with Metro Government who reviewed Mr. Lindsey's investigation and reached conclusions regarding whether Carrasco's behavior allegedly violated Metro's harassment policy. Frogge is one of Metro's Board Members. Lindsey and Taylor's conclusions, however, were limited to whether Carrasco's behavior potentially violated Metro's harassment policy. Importantly, even if Carrasco had violated Metro's policy, such behavior would not necessarily violate Title VII. *See generally Carter v. Youth Opp. Inv.*, 2019 WL 1491739, at *3 (M.D. Tenn. Apr. 4, 2019) (finding that an incident where plaintiff was smacked on the butt with a key strap was "undoubtedly inappropriate and unprofessional" but "did not . . . create hostile work environment.").

Moreover, Lindsey, Taylor, and Frogge have not been disclosed as experts and any testimony from them regarding Carrasco's alleged sexual harassment amounts to impermissible lay witness testimony. Thus, to the extent Plaintiff attempts to solicit opinions from these witnesses as to whether sexual harassment occurred or to imply that Carrasco's behavior violated Title VII, the testimony should be excluded under Federal Rules of Evidence 701 & 702.

---

[6] Cited excerpts from the Deposition of Michael Taylor are attached as Exhibit F.

4818-1173-2655v2
2826592-000016 12/27/2019

### H. Defendant's Eighth Motion *in Limine* to Exclude Evidence or Testimony Regarding *Crawford v. Nashville and Davidson County, TN* or Other Lawsuits

Defendant anticipates that Plaintiff will try to offer evidence at trial of other lawsuits filed against Metro, especially the lawsuit of former employee Vicky Crawford. *See* Story Depo. at 220:9-222:16; [7]Henson Depo. at 104:21-108:8 [8](Plaintiff's counsel questioning witnesses about the *Crawford* case). The Court may exclude evidence of other lawsuits if "its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion of the issues, [or] misleading the jury…." FED. R. EVID. 403.

Evidence related to other lawsuits against Metro serves no legitimate purpose other than to confuse and mislead the jury about the issues and evidence in this case. Here, the *Crawford* case bears little probative value on this case because *Crawford* was terminated in 2002, more than 17 years ago, and she alleged harassment by an employee who had no involvement in Plaintiff's employment. Additionally, if such evidence was allowed, it would create a trial(s) within a trial as Metro would be forced to mount a defense against other allegations like Crawford's allegations.

Similarly, introduction of evidence related to other lawsuits would be unfairly prejudicial. In fact, the Sixth Circuit has held that evidence of other lawsuits is subject to exclusion under Rule 403 because any relevance is typically outweighed by the highly prejudicial effect such evidence has upon the jury. *See Smith v. Pfizer Inc.*, 714 F. Supp. 2d 845, 855 (M.D. Tenn. 2010) (citing *McLeod v. Parsons Corp.*, 73 Fed. App'x. 846, 854 (6th Cir. 2003) (finding that "the potential for prejudice that would have accompanied this evidence [of previous lawsuits] would

---
[7] Cited excerpts from the Deposition of Deborah Story are attached as Exhibit G.
[8] Cited excerpts from the Deposition of Chris Henson are attached as Exhibit H.

have substantially outweighed its probative value, and this evidence would have misled the jury"). *See also Schrand v. Tennessee Pacific Electric Co.*, 851 F.2d 152, 156-57 (6th Cir. 1987) (finding reversible error under Rule 403 where district court admitted evidence of prior discrimination); *Johnson v. Interstate Brands Corp.*, 351 Fed. App'x. 36, 41 (6th Cir. 2009); *Hildebrandt v. Hyatt Corp.*, 154 Fed. App'x. 484, 489 (6th Cir. 2005)); *Wright v. Columbia Sussex Corp.*, 2008 WL 972699, *3 (E.D. Tenn. 2008) (excluding evidence of previously filed EEOC discrimination charges against defendant unless defendant "opens the door" to the introduction of such evidence by asserting it had not faced prior allegations of discrimination).

**I. Defendant's Ninth Motion *in Limine* to Exclude Testimony or Evidence Regarding Any Alleged Harassment by Carrasco at Prior Places of Employment**

Pursuant to Rules 401, 403, and 801 of the Federal Rules of Evidence, Plaintiff should be prohibited from introducing any evidence regarding any alleged harassment by Carrasco at prior places of employment. Defendant anticipates Plaintiff may try to introduce such evidence, which comprises inadmissible hearsay and is highly prejudicial. Dr. Shawn Joseph made the decision to hire Carrasco. (Joseph Depo. at 25:53-9). Dr. Joseph testified that he had no knowledge about any investigations into Carrasco prior to hiring him as it was not the protocol in the State of Maryland to discuss any human resources issues. (Joseph Depo. at 28:17-29:9). Further, although Plaintiff sought to subpoena Carrasco's employment records from Montgomery County Public Schools ("MCPS"), General Counsel for MCPS objected on the basis the records are confidential and protected from disclosure under Maryland's Public Information Act. Thus, any testimony regarding Carrasco's prior employment would be based upon speculation.

17

### J. Defendant's Tenth's Motion *in Limine* to Exclude Testimony or Evidence Regarding Settlement Offers.

Pursuant to Rules 401, 402, 403, and 408 of the Federal Rules of Evidence, Plaintiff should be prohibited from introducing evidence regarding mediation or settlement negotiations between the parties or settlement by Defendant of any other claim made against it. The fact the Parties have engaged in settlement discussions in this case is not relevant to any material issue in this case and would be only be offered for the purposes of demonstrating liability in violation of Rule 408.

Rule 408 states, in relevant part, that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim...is not admissible to prove liability....". Fed. R. Evid. 408.

Moreover, any settlement offers and related negotiations between the parties should be excluded because it is irrelevant under Fed. R. Evid. 401 & 402. It should also be excluded under Fed. R. Evid. 403 because any minimal probative value that such evidence could have is greatly outweighed by the potential of unfair prejudice against Defendant. The jury may improperly assume that Defendant is liable to the Plaintiff and, thus, evidence regarding settlement negotiations will confuse the issues and mislead the jury. Fed. R. Evid. 403.

Respectfully submitted,

s/ *Charles K. Grant*
Charles K. Grant, BPR No. 17081
Sharonda Fancher (admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PCthird
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
E-Mail: cgrant@bakerdonelson.com
E-Mail: sfancher@bakerdonelson.com

*Attorneys for Defendant Metropolitan Government of Nashville and Davidson County, Tennessee*

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 27, 2019, a copy of the foregoing *Defendant's Consolidated Motions in Limine* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

> Ann Buntin Steiner
> Steiner & Steiner, LLC
> 613 Woodland Street
> Nashville, TN 37206
> Tel.: (615) 244-5063
> Fax: (615) 256-8540
> asteiner@steinerandsteiner.com
>
> Heather M. Collins
> Anne Hunter
> Collins & Hunter, PLLC
> 7000 Executive Center Drive
> Building Two, Suite 320
> Brentwood, TN 37027
> heather@collinshunter.com
>
> *Attorneys for Plaintiff, Dr. Vanessa Garcia*

                                  s/ *Charles K. Grant*
                                  Charles K. Grant